# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOCCO D. BAILEY,

       Plaintiff,

v.

AMERICAN PHOENIX, INC.,

       Defendant.

Case No. 16-cv-4044-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on four motions. Plaintiff Jocco D. Bailey has filed a Motion for Summary Judgment (Doc. 56), a "Motion for Adverse Inference" (Doc. 94), and a "Motion for Rule 37(b)(2)(A) Sanctions" (Doc. 95). Defendant American Phoenix Inc. has filed a Motion for Summary Judgment (Doc. 89). All parties have filed responses and replies. The court first considers and denies plaintiff's sanctions and adverse inference motions. The court next considers the parties' cross-motions for summary judgment. For reasons explained below, the court grants defendant's summary judgment motion and denies plaintiff's summary judgment motion.

## I.      Plaintiff's Motions for Sanctions and Adverse Inference[1]

Plaintiff asks the court to sanction defendant for allegedly failing to produce documents responsive to his document requests, despite the court's order to do so (Doc. 82). *See* Doc. 94. Plaintiff also asks for the court to sanction defendant for violating Federal Rule of Civil

---

[1] Because plaintiff brings his case pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Clark v. Oklahoma*, 468 F.3d 711, 713 n.1 (10th Cir. 2006); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court cannot assume the role of advocate for the pro se plaintiff. *Hall*, 935 F.2d at 1110 (noting that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant").

Procedure 37(b)(2)(A). Doc. 95. Specifically, plaintiff asserts that defendant failed to produce responsive documents for document request Nos. 48, 83, 94, 108, 109, 119, and 120. Doc. 94 at 1; Doc. 95 at 1–2. Plaintiff asserts that defendant's failure was in bad faith, and asks the court to infer that the documents would have been unfavorable to defendants and demonstrated that defendant's stated reasons for terminating him were pretext. Doc. 94 at 2, 4. Plaintiff also asks the court to require defendant to compensate plaintiff for the earnings potential he lost when he was forced to withdraw from a "30 day Manufacturing Skills Core Class" because he was busy trying to compel discovery from defendant. Doc. 95 at 2. Plaintiff asserts that the class would have guaranteed him a "4 month sentence reduction" off of his 57 month sentence. *Id.* Plaintiff contends that his earning potential was $18.44 per hour, 40 hours per week, and that he could have earned $11,801.60 in those four months if his sentence had been reduced. *Id.*

Rule 37(b)(2)(A) lists the sanctions a federal district court may impose if a party fails to obey a court's discovery order. And, the Tenth Circuit has explained, a party who proves that its adversary destroyed evidence in bad faith may be entitled to "an adverse inference to remedy the spoliation." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

Plaintiff's motion also cites substantial authority for the propositions that a litigant has a duty to preserve evidence relevant to the litigation and that a court may impose sanctions for a litigant who fails to do so. Doc. 94 at 2–7. And, plaintiff asserts that defendant, in bad faith, failed to produce the requisite evidence. Doc. 94 at 2; Doc. 95 at 2. "[I]f the aggrieved party seeks an adverse inference" to remedy alleged spoliation, "it must also prove bad faith." *Turner*, 563 F.3d at 1149. "Without a showing of bad faith, a district court may only impose lesser sanctions." *Id.*

Here, plaintiff asserts that defendant acted in bad faith. But he never identifies any facts that might support his many conclusory assertions. Indeed, plaintiff has not established any facts to support his assertion that defendant destroyed documents or other information. Defendant contends that if plaintiff had conferred with its counsel, as our rules require, D. Kan. Rule 37.2, it could have explained that the information plaintiff perceived to be missing was not missing. And, defendant rightly contends that no evidence suggests that defendant destroyed evidence, or even that it failed to comply with the court's order. In sum, plaintiff has not asserted a sufficient basis to award Rule 37 sanctions, or for an adverse inference. The court denies plaintiff's motions.

The court turns to the parties' summary judgment motions.

## II.    Summary Judgment Motions

### A.  Facts Governing Motions for Summary Judgment

The following facts govern this motion and are uncontroverted or, where controverted, are recited in the light most favorable the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Stewart v. NationaLease of Kansas City, Inc.*, 920 F. Supp. 1188, 1202 (D. Kan. 1996) ("When both parties file cross motions for summary judgment, the court must consider each motion separately and apply controverted facts in a light most favorable to the nonmovant.").

Defendant operates chemical packaging plants that weigh, apportion, and package chemicals and materials for its tire manufacturing clients. Defendant is a Minnesota corporation and its principal place of business also is located in Minnesota. One of defendant's chemical

packaging plants is located in Topeka, Kansas.[2]  Plaintiff began working for defendant at its

Topeka plant in 2014.[3]  Plaintiff received an employee handbook and acknowledged that he had

read it.  Plaintiff worked as an Electro/Mechanical Technician from his start date until March 28,

2015.  Plaintiff then held the Lead Electro/Mechanical Technician position until his termination

on September 1, 2015.

As an Electro/Mechanical Technician, one of plaintiff's responsibilities was maintaining

the dust collector.  The dust collector is a machine that functions like a giant vacuum cleaner.  It

pulls chemical dust from the air and collects it in a container located outside defendant's

building.  Maintenance personnel, including plaintiff, were responsible for cleaning the dust

collector twice each month.

On July 27 or 28, 2015, Pre-Weigh Manager Jeff Menard noticed that the dust collector

was not working properly.  Mr. Menard asked plaintiff about the dust collector, and plaintiff told

him that he was wrong—it was working perfectly.  Plaintiff then left for the day.  But Mr.

Menard was confident that the dust collector was not working properly.  When Mr. Menard

returned on August 4, 2015, he found that the dust collector was not working properly, so he

asked mechanic Cory Lewis about the problem.  Mr. Lewis told Mr. Menard that the dust

collector had not been working correctly since February.  Mr. Menard asked Mr. Lewis to make

the repairs.  Later that day, plaintiff asked Mr. Menard if defendant was going to fire him.  Mr.

Menard told plaintiff that he believed that plaintiff had lied to him about the dust collector, and

because the collector had been broken since February, this meant that plaintiff was not

---

[2]      Plaintiff is a Kansas resident, asserting state law retaliatory discharge claims.  Thus, 28 U.S.C. § 1332 confers subject matter jurisdiction over the case.  The only two parties are citizens of different states and more than $75,000 is at issue.

[3]      Plaintiff's exact start date is unclear from the parties' briefs.

performing his basic job duty.[4]  According to plaintiff, it also was Mr. Lewis's responsibility to make repairs to the dust collector, and defendant did not fire Mr. Lewis.

On August 21, 2015, defendant's office manager, Donna Younger, was assisting another employee when plaintiff began asking her about the procedure applied when an accident occurs. Ms. Younger explained that the employee should fill out an accident report and go to the emergency room for testing.  Plaintiff began to talk loudly as a crowd gathered around Ms. Younger's office.  Plaintiff said, "the feds are going to love this."  Plaintiff asserts that he received no warnings about this incident.  But, plaintiff received warnings for disrespectful behavior in the past, such as threatening a vendor with bodily harm and calling Ms. Younger a "bitch."  Doc. 93 at 29.

On August 23, 2015, plaintiff was on on-call status.  The on-duty supervisor, Cherron Keeling, made many attempts to contact plaintiff, but did not succeed.  When Mr. Keeling eventually reached plaintiff and informed him of a problem at the plant, plaintiff responded that the problem was no big deal and so he refused to report to work.  Plaintiff asserts that he was not on call on August 23.

Plant Manager John Butler asked plaintiff if he could cover for another coworker on August 28 and 29, 2015.  Plaintiff replied that he could.  On August 29, 2015, Mr. Butler received a call from the supervisor on duty at the Topeka plant.  The supervisor reported a mechanical issue.  The supervisor had called plaintiff, who was on-call covering for another coworker.  Plaintiff told the supervisor to call another employee—Steven Good.  Plaintiff contends that his response was proper under defendant's policies and procedures because Mr.

---

[4]     Defendant asserts that plaintiff was disciplined many times while he worked for defendant.  But, plaintiff contends the reasons he was fired are those listed on his termination papers.  On this issue, the court views this fact in the light most favorable to plaintiff and thus does not recite these incidents as part of the summary judgment facts.  Instead it limits the incidents to those discussed in plaintiff's termination papers.

Good was better equipped to handle that particular issue.  Defendant believes that Mr. Good's phone number might be one of the numbers listed as an IT resource, but it asserts that Mr. Good is not designated as an IT employee.  Defendant contends that its policy requires the maintenance employee to report to work to assess the situation and diagnose the problem.  Doc. 89-5 at 4.  Then, if the problem is one that the maintenance employee cannot resolve, the employee should contact the person with the necessary expertise.  *Id.*  And, defendant's attendance policy, which is included in its handbook that plaintiff signed, explains that failing to call in or report to work is considered a "voluntary quit" and will result in voluntary termination.  Doc. 89-2 at 10.

Near the end of August 2015, plaintiff informed defendant that he had filed a complaint with the Kansas Department of Health and Environment ("KDHE") and the United States Occupational Safety and Health Administration ("OSHA").  On August 26, 2015, plaintiff sent Mr. Butler an email notifying him that he had spoken with KDHE and OSHA officials.  It stated:

> I spoke with two State of Kansas officials yesterday (potential trial witnesses: 1. KDOL Ambudsman [*sic*] at 2:35 p.m. (2) KDHE (6 [*sic*] Toxicology Lab Doctor (2:08 p/m/) and (3) OSHA area Director J. Freeman . . . all three advised me that I have the right to request through [American Phoenix, Inc.] workers compensation rights that the company set up and pay for toxicology tests to be tested for all of the chemicals that I believe I have been illegally exposed to by the company failing to provide appropriate measures when I cleaned out the dust collectors.

Doc. 63 at 3.  On August 27, 2015, plaintiff reported to defendant that he had become ill and that he believed exposure to chemicals at work may have caused the illness.  Initially, plaintiff did not want to file a workers compensation claim.  Mr. Butler, defendant's Plant Manager, told plaintiff that he would help him fill out the workers compensation claim and take him to the emergency room.  Mr. Butler then helped plaintiff complete the necessary paperwork and schedule an appointment at Stormont-Vail WorkCare for the next day, August 28, 2015.

On August 28, 2015, Dr. Garrett of the Stormont-Vail WorkCare Center called Mr. Butler and reported that he had requested a urine sample from plaintiff and plaintiff initially had provided the sample. But then, Dr. Garrett reported that plaintiff refused, dumped the urine sample on the floor, and left the WorkCare facility. Doc. 89-5 at 3. Defendant maintains a "Post-Injury Drug and Alcohol Testing" policy for any on the job injury. Doc. 89-2 at 5. This policy provides that defendant may fire any employee who does not comply with the policy. *Id.*

Sometime in late August of 2015, plaintiff told Mr. Butler that OSHA planned to visit the Topeka plant on August 31, 2015, to investigate plaintiff's complaint. An OSHA representative visited defendant's Topeka plant that day and interviewed plaintiff. While the record is unclear whether the OSHA representative came to the plant to initiate and investigate plaintiff's complaint, the court infers that the plant visit was driven by plaintiff's OSHA complaint because that is the light most favorable to plaintiff, who opposes defendant's summary judgment motion.

Eventually, defendant's human resources manager, Linda O'Mara, investigated plaintiff's employment history with defendant. It became apparent to Ms. O'Mara that plaintiff had displayed a pattern of inappropriate behavior and had failed to meet expectations. On September 1, 2015, defendant terminated plaintiff's employment—within 24 hours of plaintiff's OSHA interview at the plant.

Defendant asserts that it terminated plaintiff for disrespectful conduct, including the incident on August 28, 2015, where plaintiff reportedly poured urine on the floor of defendant's medical facility, refusing to take a medical examination. Defendant later learned that plaintiff did not pour urine on the floor, but into the toilet. Apparently, plaintiff believed the tests had been mixed up, and so he planned to return to Stormont Vail later and take the test again. Defendant issued a written apology to plaintiff on September 10, 2015. Still, the urine incident

was just one of the reasons defendant had identified for its decision to terminate plaintiff, and defendant did not give plaintiff his job back. Other reasons defendant cited for terminating plaintiff included: (1) refusal to report to work; (2) disrespectful behavior toward his office manager; and, (3) job performance issues.

Defendant's termination letter to plaintiff stated the following:

> On August 29, the shift supervisor called you at about 9:15 p.m. to report that the "C-line" was down and needed repair. As was the case the week prior, you refused to report to work, told the supervisor to call another employee, and hung up on the supervisor without any semblance of appropriate resolution to the issue.

Doc. 56-4 at 2. This letter also provided:

> Also on August 4, Jeff discussed your unprofessional conduct . . . during this discussion you asked Jeff if he was going to terminate you if the dust collector hadn't been fixed, and he informed you that you would have been terminated if the dust collector had not been fixed, because that would have meant you lied to him repeatedly and failed to perform your basic job function.

*Id.* at 4. Defendant's termination letter also cited the events on August 21, 2015, when plaintiff had treated Ms. Younger disrespectfully.

Plaintiff has asserted workers compensation retaliation and whistleblower retaliation claims against defendant. Both parties move for summary judgment on plaintiff's claims.

### B. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248-49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id*. (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

The court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### C. Choice of Law

Before addressing the parties' arguments, the court must determine which state's substantive law governs plaintiff's claims. *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1221 (D. Kan. 1998) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do not dispute choice of law in their briefs. Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the court has diversity subject matter jurisdiction in this case. *See* 28 U.S.C. § 1332. In a diversity case, federal courts apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Kansas recognizes actionable tort claims for retaliatory discharge for filing a workers compensation claim and also for whistleblowing. *See Rebarchek v. Farmers Coop. Elevator*, 35 P.3d 892, 893 (Kan. 2001); *see also Palmer v. Brown*, 752 P.2d 685, 690 (Kan. 1988). For tort claims, Kansas applies the law of the state where the tort occurred. *Brown v.*

*Kleen Kut Mfg. Co.*, 714 P.2d 942, 944 (Kan. 1986); *see also Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1456 (D. Kan. 1995). "The 'place of the wrong' is that place where the last event necessary to impose liability took place." *Dofasco, Inc.*, 889 F. Supp. at 1456 (quoting *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)). "Under this rule, the tort is deemed to have occurred where the wrong was felt." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1276 (D. Kan. 1998). Because plaintiff brings Kansas retaliatory discharge claims after being fired from his employer's Topeka, Kansas plant and because plaintiff resided in Kansas, Kansas is the place of the wrong and the court applies Kansas law.

"In diversity cases, 'the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question whether [judgment as a matter of law] is appropriate.'" *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) (quoting *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009)). And, under federal law, a "party is entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party." *Id.* (quoting *Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010)).

### D. Plaintiff's Retaliatory Discharge Claims

Plaintiff claims that defendant retaliated against him for filing a workers compensation claim and for "whistleblowing" in violation of Kansas law. *See* Doc. 1 at 3–4. "Kansas follows the common-law employment-at-will doctrine, which allows employers to terminate employees for good cause, for no cause, or even for the wrong cause." *Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 821 (Kan. 2003). So, to prevail on a retaliatory discharge claim, "an employee must demonstrate that he or she falls within one of the exceptions to the employment-at-will

doctrine." *Id.* One such exception is "termination for whistleblowing." *Id.* (quoting *Palmer v. Brown*, 752 P.2d 685, 689 (Kan. 1988)). Another exception is termination for filing a workers compensation claim. *Rebarchek v. Farmers Coop. Elevator*, 35 P.3d 892, 898 (Kan. 2001).

In retaliation claims like these two, the plaintiff must establish the prima facie case. *Goodman*, 78 P.3d at 821. If plaintiff establishes the prima facie case, the employer then "bears the burden of producing evidence that the employee was terminated for a legitimate nondiscriminatory reason." *Id.* If the employer produces evidence of a nondiscriminatory purpose, the burden shifts back to the plaintiff to "produce evidence that the employer's motives were pretextual." *Id.* This evidence must include specific facts disputing the employer's motives. *Id.* (quoting *Bracken v. Dixon Indus., Inc.*, 38 P.3d 679, 682 (Kan. 2002)).

### 1. Workers Compensation Retaliation Claim

### a. Plaintiff's Prima Facie Case

A workers compensation retaliatory discharge claim requires the plaintiff to produce admissible evidence sufficient to support a finding that: "(1) [t]he plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination." *Rebarchek*, 35 P.3d at 899.

For summary judgment purposes, defendant concedes that plaintiff has discharged his burden on three of the four elements of his prima facie case. But defendant asserts that plaintiff has not adduced facts to support the fourth element—that a causal connection exists between plaintiff's workers compensation claim and his termination. But, the Kansas Court of Appeals has recognized that "[p]roximity in time between the claim and discharge is a typical beginning

point for causal connection." *White v. Tomasic*, 69 P.3d 208, 212 (Kan. Ct. App. 2003). Here, plaintiff was fired on September 1, 2015, just days after filing his workers compensation claim, and just one day after OSHA visited the Topeka plant to conduct an investigation on some matter involving workplace safety. Consequently, the court rejects defendant's summary judgment attack on the prima facie case and thus assumes that plaintiff has stated a prima facie case for his workers compensation retaliation claim.

### b. Defendant's Non-retaliatory Reasons

Defendant asserts four legitimate, non-discriminatory reasons for firing plaintiff. They are: (1) refusal to report to work on two occasions in August; (2) refusal to comply with medical examination procedures by pouring his urine into the toilet in protest and thus not submitting it for analysis; (3) disrespectful behavior toward his office manager, Ms. Younger; and, (4) poor performance of his job duties maintaining the dust collector. Doc. 89 at 18. Because these reasons are both legitimate and non-discriminatory, and because defendant has supported them with admissible evidence, the burden shifts back to plaintiff to produce evidence that these reasons are pretextual. *Rebarchek*, 35 P.3d at 898.

### c. Pretext

Under Kansas law, "[w]hen the employer provides a permissible reason for [the employee's] discharge, the employee must then assert specific facts to establish a triable issue as to whether the employer's reason was a mere cover-up or pretext for retaliatory discharge in order to avoid summary judgment." *Lopez-Vargas v. Russell Stover Candies, Inc.*, No. 92,225, 2004 WL 3048956 (Kan. Ct. App. Dec. 30, 2004). But if an employer cites multiple nondiscriminatory reasons for its decision to fire plaintiff, it is unclear whether Kansas law

requires plaintiff to produce admissible evidence sufficient to create a triable issue of fact for each reason.

In Title VII cases, the Tenth Circuit has held that when "an employee cites multiple nondiscriminatory reasons for its employment decision, an employee generally 'must proffer evidence that shows each of the employer's justifications are pretextual.'" *Sydney v. ConMed Elec. Surgery*, 275 F. App'x 748, 753 (10th Cir. 2008) (quoting *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000)). But, if "one of the employer's stated reasons for its actions predominates the others, 'demonstrating that reason to be pretextual is enough to avoid summary judgment.'" *Id.* (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1127 (10th Cir. 2005)). Kansas law uses the burden shifting approach originally adopted by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This leads the court to believe that the Kansas Supreme Court, if presented with the question, would require a retaliation plaintiff to comply with the approach used by *Sydney* for multiple reason and predominant reason terminations. Also, this approach seems consistent with Kansas courts' position that the plaintiff must establish a triable issue of fact whether the employer's "reason" was pretextual. So, the court applies this standard to plaintiff's retaliation claims here.

In his Response to defendant's Motion for Summary Judgment, plaintiff cites five reasons that defendant's reasons for firing him are pretext. Doc. 93 at 29–30. These reasons are: (1) temporal proximity; (2) inconsistencies; (3) implausibilities; (4) contradictions and falsifications; and, (5) disparate treatment. *Id.* But none of these reasons are sufficient to discharge plaintiff's pretext burden. The court explains why, below.

First, plaintiff asserts that defendant's reasons for firing him are pretext because defendant fired him just three days after he filed his worker's compensation claim. But while the

Kansas Court of Appeals has held that "temporal proximity is sufficient to establish a prima facie" case, it never has suggested that temporal proximity alone can stave off summary judgment. *See White v. Tomasic*, 69 P.3d 208, 213 (Kan. Ct. App. 2003); *see also Proctor v. United States Parcel Serv.*, 502 F.3d 1200, 1213 n.6 (10th Cir. 2007) (concluding that Kansas courts would require a plaintiff to show more than temporal proximity to establish a genuine issue of material fact concerning pretext); *Dey v. Scriptpro LLC*, No. 95,375, 2006 WL 3589974, at *5 (Kan. Ct. App. Dec. 8, 2006) (finding that plaintiff had failed to produce evidence to establish a triable issue of fact for pretext when the only specific fact he cited at summary judgment was the proximity between his injury and termination).

Second, plaintiff asserts that defendant's reasons for firing him are pretexts because of inconsistencies. But defendant's reasons for terminating plaintiff have been consistent: plaintiff's refusal to comply with a medical examination, refusing to report to work, disrespectful behavior toward the office manager, and poor job performance. Plaintiff contends that defendant admits that he was not fired for failing to fix the dust collector. Doc. 93 at 29 (citing Doc. 74-1 admission 47). And, plaintiff asserts that defendant has changed its position about plaintiff's failure to appear for work on August 23, 2015. But plaintiff cites no admissible evidence to support either one of these alleged inconsistencies. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones*, 366 F.3d at 875. And "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Plaintiff has identified no admissible evidence that defendant's reasons for firing him have been inconsistent, or that these alleged inconsistencies demonstrate pretext.

Third, plaintiff asserts that defendant's reasons for firing him are pretext because of implausibilities. Plaintiff asserts that defendant did not really fire him for disrespecting Ms. Younger, because five months earlier he had threatened a vendor with bodily harm and called his office manager a "bitch," but the only discipline he received was a verbal warning. *Id.* But plaintiff's view of these incidents cuts the wrong way. They support defendant's legitimate and nonretaliatory reason for firing plaintiff—it is not implausible that defendant would fire him for disrespectful behavior, especially when he had received a verbal warning five months earlier for engaging in disrespectful conduct similar to the conduct that formed part of the reason for his termination. Plaintiff has not shown by admissible evidence that defendant's reasons for firing him are pretextual because of implausibilities.

Fourth, plaintiff asserts that he has adduced evidence of contradictions and falsifications about his failure to report to work. Plaintiff contends that he followed proper protocol on August 29, 2015, when he was called about the IT issue. In a sworn declaration, plaintiff explains that he did not refuse to report to work that day, but that he followed defendant's protocol to defer IT issues to defendant's designated IT employee. Doc. 56-8 at 2. And, plaintiff contends that defendant admits that IT eventually resolved the issue. *Id.* Plaintiff asserts that he did not have access to the internet software needed to fix the problem, and that his coworker, Mr. Lewis, also had responded to supervisors with instructions to "call Steve." *Id.* at 3. But, plaintiff concedes that he never reported to work, even though he was on-call. According to Plant Manager John Butler, it is not within the scope of the shift supervisor's duties to determine the nature of any mechanical issues. Instead, it is the on-call maintenance employee's duty to report to work, assess the situation, and diagnose the problem. If the on-call employee determines that the problem is one that he cannot resolve, then he must contact the person with the necessary

expertise to fix it.  Importantly, plaintiff never denies that he failed to follow defendant's protocol requiring an on-call employee to report to work to assess a situation before referring the matter to another employee.  The summary judgment evidence thus fails to show any contradictions or falsifications about plaintiff's failure to report to work when he was on-call on August 29, 2015.

Fifth, plaintiff contends that defendant exhibited disparate treatment toward similarly situated employees who did not file workers compensation claims.  Plaintiff asserts that there are employees who acted like he did, but who were not fired.  He specifies just one such employee— Mr. Lewis.  Plaintiff asserts that it was also Mr. Lewis's responsibility to fix the dust collector, that he also failed to fix it, and Mr. Lewis was not fired.

Kansas courts have not addressed whether evidence of disparate treatment supports allegations that an employer's legitimate reasons are pretextual.  But, the Tenth Circuit has held that "[i]nstances of disparate treatment of similarly situated individuals may support a claim of pretext, such as when employees who 'are involved in or accused of the *same offense* . . . are disciplined in different ways.'" *Vigil v. Colo. Dep't of Higher Educ.*, No. 98-1174, 1999 WL 407479, at *6 (10th Cir. June 21, 1999) (quoting *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir. 1997)).  But "plaintiff must show that he was similarly situated in all relevant aspects." *Id.*  Relevant aspects include that the plaintiff and individual have committed violations of "comparable seriousness." *Id.*  (citing *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).  And plaintiff "must account for all 'differentiating or mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Using this standard as guidance, plaintiff has not shown that he was similarly situated to Mr. Lewis. Plaintiff asserts that he was similarly situated to Mr. Lewis because they both failed to fix the dust collector even though they were responsible to do so. But defendant contends that it fired plaintiff for failing to fix the dust collector and for committing other offenses—failing to report to work, disrespecting Ms. Younger, and failing to comply with its medical policy by refusing to take a medical exam. So, Mr. Lewis and plaintiff were not similarly situated. *See Vigil*, 1999 WL 407479, at *6 (holding that plaintiff was not similarly situated to his coworker when both plaintiff and his coworker had been accused of violating a workplace rule, but plaintiff also was accused of lying, which aggravated his offense). Other than demonstrating by his sworn statement that Mr. Lewis and plaintiff shared the same job responsibility, plaintiff has produced no admissible evidence demonstrating that he and Mr. Lewis were similarly situated. So, defendant has not supported his pretext claim with examples of disparate treatment of similarly situated employees.

In sum, plaintiff only has produced admissible evidence that defendant's stated reasons might have been pretext based on the temporal proximity between filing his claim and his termination. But, temporal proximity alone is insufficient to establish pretext. *See, e.g.*, *White v. Tomasic*, 69 P.3d 208, 213 (Kan. Ct. App. 2003). The court thus grants defendant's Motion for Summary Judgment against plaintiff's workers compensation retaliation claim. The court also denies plaintiff's Motion for Summary Judgment on this claim.

### 2. Whistleblower Retaliation

#### a. Plaintiff's Prima Facie Case

Plaintiff's whistleblower retaliation claim is substantially similar to his workers compensation retaliation claim. A retaliatory discharge claim for whistleblowing requires the

plaintiff to prove: (1) a reasonably prudent person would have "concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare"; (2) the employer know that the employee had reported such violation before discharging him or her; (3) "the employee was discharged in retaliation for making the report"; and, (4) that the "whistleblowing was done in good faith based on a concern regarding the wrongful activity reported." *Goodman*, 78 P.3d at 821 (quoting *Palmer*, 752 P.2d at 690). Because plaintiff's whistleblower retaliation claim mirrors his workers compensation retaliation claim, both plaintiff and defendant grouped their arguments about this claim together. So, for the same reasons discussed above, the court grants defendant's Motion for Summary Judgment on plaintiff's whistleblower retaliation claim. It explains why, briefly, below.

Like plaintiff's workers compensation claim, defendant concedes for summary judgment that plaintiff has established three of the four elements of his whistleblower prima facie case. Defendant asserts, however, that plaintiff has not adduced admissible evidence supporting the third element—that he was discharged from his employment as retaliation for making his report. But, because temporal proximity is sufficient to support a prima facie case on this issue, the court assumes, without deciding, that plaintiff has stated a prima facie case for his workers compensation retaliation claim.

### b. Defendant's Non-Retaliatory Reasons and Pretext

Defendant identifies the same four legitimate, non-retaliatory reasons for firing plaintiff as discussed above: (1) refusal to report to work on two occasions in August; (2) refusal to comply with medical examination and pouring his urine test into the toilet in protest; (3) disrespectful behavior toward his office manager, Ms. Younger; and (4) poor performance in his

job duties of maintaining the dust collector.  Doc. 89 at 18.  Producing this evidence thus shifts the burden back to plaintiff to produce admissible evidence capable of finding a reasonable inference that these reasons are pretextual.  *Goodman*, 78 P.3d at 821.

Plaintiff relies on the same five pieces of evidence of defendant's pretext for his whistleblower retaliation claim as he did to support his workers compensation claim.  And, as discussed above, those allegations lack the specificity legally required for plaintiff to carry his burden on this issue.  The court thus grants defendant's Motion for Summary Judgment on plaintiff's whistleblower retaliation claim.  The court also denies plaintiff's Motion for Summary Judgment on this claim.

### E.  Plaintiff's Punitive Damages Claims

Because the court grants defendant's Motion for Summary Judgment against both of plaintiff's two claims, no basis exists for plaintiff to recover punitive damages.  Thus, the court grants summary judgment against plaintiff's punitive damages claims.

### III.    Conclusion

No genuine dispute of material fact exists on plaintiff's workers compensation or whistleblower retaliation claims.  Defendant is entitled to summary judgment as a matter of law.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 89) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment (Doc. 56), Motion for Adverse Inference (Doc. 94), and Motion for Rule 37(b)(2)(A) Sanctions (Doc. 95) are denied.

**IT IS SO ORDERED.**

Dated this 29th day of August, 2017, at Topeka, Kansas.

s/ Daniel D. Crabtree_____
Daniel D. Crabtree
United States District Judge